# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-1620 (RMC) |
| U.S. DEPARTMENT OF JUSTICE 950 Pennsylvania Ave., NW Washington, DC 20530 | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Department of Justice ("DOJ") respectfully moves this Court to dismiss this action for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, defendant respectfully requests that this Court dismiss plaintiff's allegations that DOJ improperly withheld documents responsive to its Freedom of Information Act ("FOIA") request for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Finally, in the alternative, defendant respectfully requests that this Court award it summary judgment pursuant to Federal Rule of Civil Procedure 56 on plaintiff's improper withholding claim.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
D.C. Bar No. 418925

*/s/ Michael P. Abate*
MICHAEL P. ABATE
IL Bar No. 6285597
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
<u>Mailing Address</u>
P.O. Box 883
Washington, D.C. 20044
<u>Delivery Address</u>
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20001
Telephone:     (202) 616-8209
Facsimile:     (202) 616-8470

*Attorneys for Defendant*

Dated: November 14, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, )<br><br>Plaintiff, )<br><br>v. )<br><br>U.S. DEPARTMENT OF JUSTICE )<br>950 Pennsylvania Ave., NW )<br>Washington, DC 20530 )<br><br>Defendant. ) | Civil Action No. 07-1620 (RMC) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

MICHAEL P. ABATE
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch

*Attorneys for Defendant*

## INTRODUCTION

This case concerns a Freedom of Information Act ("FOIA") request that yielded no documents. In response to a report on an internet website alleging that the White House worked with a political consultant, Mark McKinnon, to devise media strategy concerning the replacement of several United States Attorneys, plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed a FOIA request with defendant Department of Justice ("DOJ"). *See* Compl. ¶¶ 21-22. That FOIA request sought "all emails sent to or from" Mr. McKinnon or his public relations firms (Maverick Media, Inc. and Public Strategies, Inc.) "and any former or current Department of Justice ("DOJ") employee in the Offices of the Attorney General, Deputy Attorney General and/or Associate Attorney General." *Id.* ¶ 22. CREW also sought expedited processing of its FOIA request, and a waiver of all fees and expenses associated therewith. *Id.*

In response to CREW's FOIA request, DOJ conducted a search reasonably calculated to uncover any responsive records. Because that search is completed, and because it identified no responsive documents, both of CREW's claims under the FOIA should be dismissed. The first FOIA claim, which alleges that DOJ improperly denied CREW expedited processing of its FOIA request, should be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Under the plain language of the FOIA, courts lack jurisdiction to review allegations concerning the denial of expedited processing where, as here, the defendant agency has completed processing the plaintiff's FOIA request.

The Court similarly should dismiss plaintiff's second claim, which alleges improper withholding of documents responsive to its FOIA request. The Supreme Court has made clear that jurisdiction over FOIA claims depends upon the wrongful withholding of responsive

documents; where, as here, there are no responsive documents being withheld, courts lack jurisdiction over such FOIA claims and should dismiss them pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the same reason – that there are no responsive documents being withheld – plaintiff's second FOIA claim would also be subject to dismissal for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Finally, even if the Court concludes that plaintiff's improper withholding allegation adequately states a claim under FOIA, it should nonetheless award summary judgment in favor of DOJ under Federal Rule of Civil Procedure 56, because there are no documents to which plaintiff is entitled access under FOIA.

## LEGAL STANDARD

Defendant moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.

In reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), courts must "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citation and internal quotation marks omitted).  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."  *Id.* (citation and internal quotation marks omitted); *see also Center For Biological Diversity v. Gutierrez*, 451 F. Supp. 2d 57, 64 (D.D.C. 2006) (party that seeks to invoke the federal court's jurisdiction "bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction").  Pursuant to Rule 12(b)(1), the court "may consider materials outside the

pleadings" in determining whether it has jurisdiction over the claims presented therein. *Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *Thompson v. Capitol Police Board*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) ("In determining whether the plaintiff has met this burden [of establishing subject-matter jurisdiction], the court is sometimes required to look to matters outside of the pleadings.").

A court should dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(6) where a plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). In reviewing a motion to dismiss under Rule 12(b)(6), "the Court must accept all well-pleaded allegations as true, construing them in the light most favorable to the plaintiff." *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006). Although Plaintiff is entitled to "the benefit of all reasonable inferences from the facts alleged," this court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000) and *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Similarly, this court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.* (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.1994)).

Finally, summary judgment is to be freely granted pursuant to Federal Rule of Civil Procedure 56 where there are no material facts genuinely at issue, and the agency is entitled to judgment as a matter of law. *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314-15 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

-3-

**ARGUMENT**

**I.    AFTER A SEARCH REASONABLY CALCULATED TO UNCOVER ALL RELEVANT DOCUMENTS, DOJ DID NOT LOCATE ANY RECORDS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST**

To establish the sufficiency of its search, DOJ must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents" responsive to CREW's FOIA request. *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). This standard requires DOJ to make "a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (noting that an agency is not required to search every record system). DOJ can satisfy this burden by submitting an agency declaration that describes the "scope and method of the search" in "reasonable detail." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). That declaration "need not be precise," but must show that a good faith effort was made "to conduct a search for the requested records," *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 33-34 (D.D.C. 2002), and must "aver[] that all files likely to contain responsive materials . . . were searched," *Wilbur v. CIA*, 273 F. Supp. 2d 119, 124 (D.D.C. 2003). Such agency declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

There is no question that DOJ's search for documents responsive to CREW's request met this standard. On June 29, 2007, the DOJ's Office of Information and Privacy ("OIP") sent a memorandum to the three offices covered by plaintiff's FOIA request – the Offices of the

Attorney General, Deputy Attorney General, and Associate Attorney General.  *See* Declaration of Melanie Ann Pustay ("Pustay Decl.") ¶ 9.  Moreover, because this FOIA request sought e-mail communications, OIP specifically notified the offices that employees' e-mail accounts should be searched for responsive records.  *Id.*  The practice of those offices is to notify each individual staff member of the receipt of such a memorandum from OIP, and to conduct a search of each individual staff member's files, including electronic files, for responsive records.  *Id.*

On July 12, 2007, the Office of the Attorney General advised OIP that it completed the requested records search and did not locate any responsive records.  *Id.* ¶ 10.  On July 16, 2007, the Office of the Associate Attorney General similarly informed OIP that it performed the requested records search and located no documents responsive to the FOIA request. *Id.* ¶ 11. Finally, on October 15, 2007, the Office of the Deputy Attorney General notified OIP that it had completed its record search and identified no responsive documents.  *Id.* ¶ 12.

In addition to initiating these searches of the files of current employees in the Offices of Attorney General, Deputy Attorney General, and Associate Attorney General, OIP itself also searched former employees' e-mail accounts.  *Id.* ¶ 13.  OIP first identified the former employees most likely to have responsive materials, and then conducted e-mail searches of the Enterprise Vault ("EV Vault"), which maintains e-mails of former employees in senior leadership offices of the DOJ.  *Id.* ¶ 14.  The search for e-mails in the EV Vault was conducted by searching the selected individual's e-mails for communications containing the search terms "Mark McKinnon," "Maverick Media," and "Public Strategies" that were sent or received between March 8, 2007 (the date of the first Congressional inquiry into the replacement of U.S. Attorneys) and July 18, 2007 (the date the EV Vault was searched).  *Id.* ¶ 15.  All potentially

responsive records ("hits") were printed off and subsequently reviewed to determined whether they were responsive to the request; no records were deemed responsive. *Id.*

DOJ's declaration demonstrates that it fully complied with its obligation to conduct a search "reasonably calculated to uncover all relevant documents." *Weisberg*, 745 F.2d at 1485; *see also Oglesby,* 920 F.2d at 68 (D.C. Cir. 1990) (agency must simply show "that it made a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested").[1]

## II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM THAT DOJ IMPROPERLY WITHHELD RESPONSIVE DOCUMENTS OR, IN THE ALTERNATIVE, AWARD SUMMARY JUDGMENT TO DOJ

### A. Because DOJ Located No Records Responsive to Plaintiff's FOIA Request, the Court Should Dismiss Plaintiff's Claim for Improper Withholding of Documents

Because the DOJ's search identified no responsive records, the Court lacks subject matter jurisdiction over plaintiff's claim that DOJ improperly withheld documents. Therefore, the Court should dismiss that claim under Federal Rule of Civil Procedure 12(b)(1). Under the FOIA, "federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *U.S.*

_____

[1] The fact that this search located no direct communications between DOJ employees and Mr. McKinnon or his public relations firms does not mean that the search was inadequate. On the contrary, this result is unsurprising in light of the fact that the internet report that formed the basis of plaintiff's FOIA request did not allege any direct communications between DOJ and Mr. McKinnon. Instead, it merely alleged that "White House officials" obtained information from DOJ employees, and that those White House officials – not DOJ employees – passed the information on to Mr. McKinnon. *See* Compl. ¶ 21 & Exh. D.

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *see also Kissinger*, 445 U.S. at 150

("Judicial authority to devise remedies and enjoin agencies can only be invoked, under the

jurisdictional grant conferred by § 552, if the agency has contravened all three components of

this obligation.").

    In this case, the Court lacks jurisdiction over the claim of improper withholding of

records because the plaintiff cannot meet *any* of these criteria.  As demonstrated by the

Declaration of Melanie Ann Pustay, the Director of DOJ's Office of Information and Privacy,

DOJ located no records responsive to plaintiff's FOIA request.  Therefore, the agency has not

"withheld" anything pursuant to FOIA and, *a fortiori*, the agency can not have made any

"improper" withholdings.  In such cases, courts should dismiss FOIA claims for lack of

jurisdiction.  As the court noted in *Kuffel v. U.S. Bureau of Prisons*, 882 F. Supp. 1116, 1120

(D.D.C. 1995), "if it can be established through affidavits that no 'agency records' responsive to

the Plaintiff's requests were found . . . after a good faith, reasonable search was conducted, no

jurisdiction remains . . . because the FOIA requirement that 'agency records' *exist* to be

'improperly' 'withheld' cannot be met."  Because the Department's search produced no

responsive records, *see* Pustay Decl. ¶¶ 8-17, this court lacks jurisdiction over CREW's FOIA

claim and should, like the Court in *Kuffel*, dismiss that claim pursuant to Rule 12(b)(1).[2]

    Alternatively, the absence of responsive records would also justify dismissal of plaintiff's

---

    [2] Because *Kuffel* makes clear that the reasonableness of the search goes to the Court's
*jurisdiction* over the FOIA claim, the Court may consider the Agency's declarations without
converting the instant motion into one for summary judgment.  *See Kuffel*, 882 F. Supp. at 1120
("The Court may go beyond the pleadings and consider affidavits to determine whether subject
matter jurisdiction exists.").  However, even if the Court's consideration of the DOJ's declaration
did convert the motion into one for summary judgment, the Court should award summary judgment
to the defendant, as noted *infra*.

improper withholding claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Courts may dismiss FOIA claims under Rule 12(b)(6) where a plaintiff cannot meet one or more of the *Kissinger* factors outline above (*i.e.*, that an agency has (1) improperly; (2) withheld; (3) agency records). *See, e.g.*, *Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995) (dismissing FOIA claim under Rule 12(b)(6) where plaintiff could not show that the records in question were agency records under FOIA). As noted, plaintiff cannot meet *any* of the elements of a FOIA claim. Thus, plaintiff simply cannot state a claim under 5 U.S.C. § 552(a)(4)(B).

**B.      In the Alternative, this Court Should Award Summary Judgment to Defendant**

Finally, if the Court concludes that the improper withholding claim cannot be dismissed under either Rule 12(b)(1) or 12(b)(6), it should award summary judgment in favor of the defendant. Summary judgment is the procedural vehicle by which most FOIA actions are resolved, *see* Fed. R. Civ. P. 56(c); *see also, e.g.*, *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993), and is to be freely granted where there are no material facts genuinely at issue, and the agency is entitled to judgment as a matter of law. *See Alyeska Pipeline Serv. Co.*, 856 F.2d at 314-15; *Military Audit Project*, 656 F.2d at 738.

Summary judgment in a FOIA case generally hinges on the sufficiency of the agency's affidavits. *Hemenway v. Hughes*, 601 F. Supp. 1002, 1004 (D.D.C. 1985). As noted above, such affidavits are to be "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Edmonds Institute v. U.S. Dep't of Interior*, 460 F. Supp. 2d 63, 68 (D.D.C. 2006) (citation and quotation marks omitted). In this case, the DOJ's declaration demonstrates that a reasonable search

produced no responsive documents.  Thus, there are no withholdings for the plaintiff to challenge, and the agency is entitled to judgment "as a matter of law" on any claim that it improperly withheld documents under FOIA.  *See, e.g.*, *Roum v. Bush*, 461 F.Supp.2d 40, 47 (D.D.C. 2006) (awarding summary judgment to defendant where, in response to agency declarations, plaintiff "submitted nothing to suggest that the searches were unreasonable or that any records actually exist").

III.    **BECAUSE DOJ HAS COMPLETED PROCESSING CREW'S REQUEST, THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S EXPEDITED PROCESSING CLAIM**

In addition to challenging the purported withholding of documents responsive to its FOIA request, plaintiff also maintains that the DOJ improperly denied its request for expedited processing.  *See* Compl. ¶¶ 37-40.  This court lacks jurisdiction over that claim.  The FOIA provides that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv).  As the DOJ's declaration makes clear, it completed the processing of CREW's request, and informed CREW of that fact in a letter dated October 22, 2007.  *See* Pustay Decl. ¶ 17 & Exh. F.  This court should therefore dismiss plaintiff's expedited processing claim for lack of jurisdiction.  *See, e.g.*, *Judicial Watch, Inc. v. U.S. Naval Observatory*, 160 F.Supp.2d 111, 112 (D.D.C. 2001) ("Therefore, while plaintiff was entitled to file a lawsuit on June 11, 2001 for review of defendant's failure to respond to its request for expedited processing, because defendant has since provided a complete response to the request for records, this Court no longer has subject matter jurisdiction over the claim that defendant failed to expedite processing of plaintiff's request.").

## CONCLUSION

For all of the reasons noted above, this Court should dismiss this action for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, this Court should dismiss plaintiff's allegations of improper withholding for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or award DOJ summary judgment pursuant to Federal Rule of Civil Procedure 56 on that claim.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
D.C. Bar No. 418925

*/s/ Michael P. Abate*
MICHAEL P. ABATE
IL Bar No. 6285597
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C. 20044
Delivery Address
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20001
Telephone:     (202) 616-8209
Facsimile:     (202) 616-8470

*Attorneys for Defendant*

Dated: November 14, 2007

-10-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of November 2007, I caused the foregoing Motion to Dismiss or, in the Alternative, for Summary Judgment, to be served on plaintiff's counsel of record electronically by means of the Court's CM/ECF system.


*/s/ Michael P. Abate*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| CITIZENS FOR RESPONSIBILITY AND ) | |
| ETHICS IN WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1620 (RMC) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 7(h), defendant Department of Justice submits this statement of material facts as to which there is no genuine issue:

1.    Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submitted a Freedom of Information Act ("FOIA") request to defendant Department of Justice ("DOJ") in a letter dated May 23, 2007.  That request sought electronic mail (e-mail) messages sent between Mark McKinnon, Maverick Media, Inc., or Public Strategies, Inc. and current or former Department of Justice employees in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General concerning any aspect of the Congressional inquiry into the firings of United States Attorneys.  *See* Declaration of Melanie Ann Pustay, Director of the Office of Information and Privacy ("Pustay Decl.") ¶ 3.

2.    Plaintiff also sought expedited processing of its FOIA request from both the DOJ's Office of Information and Privacy ("OIP") and the DOJ's Office of Public Affairs ("PAO").  *Id.* ¶¶ 4-5.

3.    On June 4, 2007, OIP informed plaintiff that it denied plaintiff's request for expedited processing. *Id.* ¶ 6.

4.    On June 7, 2007, plaintiff administratively appealed the denial of its request for expedited processing. *Id.* ¶ 18.

5.    On June 15, 2007, OIP's Associate Director informed plaintiff she was affirming the denial of plaintiff's request for expedited processing. *Id.* ¶ 19.

6.    On June 27, 2007, OIP further informed plaintiff that the PAO also denied plaintiff's request for expedited processing. *Id.* ¶ 7.

7.    On June 29, 2007, records searches were initiated in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.  The typical practice of these Offices is to notify each individual staff member in that Office of the receipt of OIP's memorandum requesting that a search be conducted, and each staff member's files, including electronic files, are then searched as necessary for records responsive to the request.  OIP specifically informed each of these Offices that plaintiff requested e-mails in order to ensure that a thorough search was conducted. *Id.* ¶ 9.

8.    On July 10, 2007, plaintiff administratively appealed the denial of its request for expedited processing to the Director of OIP. *Id.* ¶ 20.

9.    On July 12, 2007, the Office of the Attorney General informed OIP that it completed its records search and found no documents responsive to the request. *Id.* ¶ 10.

10.    On July 16, 2007, the Office of the Associate Attorney General informed OIP that it completed its records search and found no documents responsive to the request. *Id.* ¶ 11.

11.    On July 18, 2007, OIP conducted a search of the e-mail accounts of former DOJ employees in the Offices of the Attorney General, Deputy Attorney General, and Associate

Attorney General, that were most likely to contain responsive records. *Id.* ¶¶ 13-15. No responsive records were located in that search. *Id.* ¶ 15.

12.     On August 2, 2007, the Associate Director of OIP affirmed the determination by the Director of the PAO to deny plaintiff's request for expedited processing. *Id.* ¶ 21.

13.     On August 6, 2007, OIP sent plaintiff a letter providing an interim response to its FOIA request. OIP informed plaintiff that records searches in the Offices of Attorney General and Associate Attorney General produced no responsive records, but that a search of the Office of Deputy Attorney General was ongoing. OIP also indicated that it would notify plaintiff again once the records search was completed. *Id.* ¶ 16.

14.     On September 13, 2007, plaintiff filed this suit in the United States District Court for the District of Columbia.

15.     On October 15, 2007, the Office of the Deputy Attorney General informed OIP that it completed its records search and found no documents responsive to the request. *Id.* ¶ 12.

16.     On October 22, 2007, OIP provided plaintiff with a final response to its FOIA request. OIP informed plaintiff that it completed processing the FOIA request and found no responsive records. *Id.* ¶ 17.

<div style="margin-left: 40%;">

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
D.C. Bar No. 418925

</div>

*/s/ Michael P. Abate*
MICHAEL P. ABATE
IL Bar No. 6285597
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
<u>Mailing Address</u>
P.O. Box 883
Washington, D.C. 20044
<u>Delivery Address</u>
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20001
Telephone:    (202) 616-8209
Facsimile:    (202) 616-8470

*Attorneys for Defendant*

Dated: <u>November 14, 2007</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
                                      )
        Plaintiff, )
                                       )
        v. )         Civil Action No. 1:07-cv-01620 (RMC)
                                       )
U.S. DEPARTMENT OF JUSTICE, )
                                       )
        Defendant. )
_____ )

## DECLARATION OF MELANIE ANN PUSTAY

I, Melanie Ann Pustay, declare the following to be true and correct:

1) I am the Director of the Office of Information and Privacy (OIP), United States Department of Justice. In this capacity, I am responsible for overseeing the actions of the Initial Request (IR) Staff. The IR Staff is responsible for searching for and reviewing records within OIP and the senior leadership offices of the Department of Justice, including the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, in response to requests made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. IV 2004). The IR Staff determines whether records responsive to access requests exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the IR Staff consults with personnel in the senior leadership offices and, when appropriate, with other components within the Department of Justice as well as with other Executive Branch agencies.

2) I make the statements herein on the basis of personal knowledge, as well as on

-1-

information acquired by me in the course of performing my official duties.

<div align="center">Initial Processing of Plaintiff's Request</div>

3) By letter dated May 23, 2007, Anne L. Weismann, on behalf of plaintiff Citizens for Responsibility and Ethics in Washington (CREW), submitted a FOIA request to OIP for electronic mail (e-mail) messages sent between Mark McKinnon, Maverick Media, Inc., or Public Strategies, Inc. and current or former Department of Justice employees in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General concerning any aspect of the Congressional inquiry into the firings of United States Attorneys. (A copy of plaintiff's initial request letter is attached hereto as Exhibit A.)

4) In its initial FOIA request letter to OIP, plaintiff requested a waiver of fees[1] and also sought expedited processing based on assertions that it is "engaged primarily in the dissemination of information" and that "there is a particular urgency in informing the public about the degree to which the varying public explanations DOJ has offered regarding the termination of nine U.S. Attorneys were shaped by the input and influence of Mark McKinnon and his companies." The Department of Justice permits expedition of FOIA requests pursuant to four different standards. See 28 C.F.R. § 16.5(d)(1)(i)-(iv) (2007). Plaintiff sought expedited processing from OIP pursuant to the Department's second standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii).

5) By letter dated May 23, 2007, plaintiff also submitted a request for expedited processing to the Director of the Office of Public Affairs (PAO). In this instance, plaintiff specifically sought

---

[1]No fees were assessed for this request and so the fee waiver request is moot.

expedition pursuant to the Department's fourth standard permitting such processing for requests

involving "[a] matter of widespread and exceptional media interest in which there exist possible

questions about the government's integrity which affect public confidence." 28 C.F.R.

§ 16.5(d)(1)(iv). Plaintiff submitted its expedition request under standard (iv) directly to the

Director of PAO, who makes the decision whether to grant or deny expedited processing under this

standard. Id. § 16.5(d)(2). (A copy of plaintiff's May 23, 2007 letter to the Director of PAO is

attached hereto as Exhibit B.)

      6) By letter dated June 4, 2007, OIP acknowledged receipt of plaintiff's FOIA request. OIP

also denied plaintiff's request for expedited processing pursuant to 28 C.F.R. § 16.5(d)(1)(ii),

because the primary activity of CREW did not appear to be information dissemination. OIP's letter

also advised plaintiff that its request for expedited processing pursuant to 28 C.F.R. § 16.5(d)(1)(iv)

was still pending with the Director of Public Affairs, and that we would promptly notify plaintiff

once the Office of Public Affairs' Director advised us of her determination. Finally, OIP's letter

advised plaintiff that searches had been initiated in the Offices of the Attorney General, Deputy

Attorney General, and Associate Attorney General. (A copy of OIP's June 4, 2007 letter is attached

hereto as Exhibit C.)

      7) On June 20, 2007, OIP was informed by PAO that the Director of PAO had denied

plaintiff's request for expedited processing under standard (iv), because she had determined that the

subject of plaintiff's request was not a matter of widespread and exceptional media interest. By

letter dated June 27, 2007, OIP then advised plaintiff of the decision by the Director of PAO. OIP

also reiterated that the request had been assigned to a FOIA Specialist in OIP and was being

processed. (A copy of OIP's June 27, 2007 letter to plaintiff is attached hereto as Exhibit D.)

<u>Records Searches</u>

8) In its request letter, plaintiff specifically sought records from the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General. Therefore, OIP conducted searches for records responsive to plaintiff's request in those Offices.

9) By memoranda dated June 29, 2007, records searches were initiated in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General. The practice for these three Offices is to notify each individual staff member in that Office of the receipt of OIP's memorandum requesting that a search be conducted, and each staff member's files, including electronic files, are then searched as necessary for records responsive to the request. In this instance, OIP notified these Offices that e-mails were specifically requested by plaintiff.

10) By memorandum dated July 12, 2007, the Office of the Attorney General advised OIP that it had completed its records search and did not locate any records responsive to plaintiff's request.

11) By memorandum dated July 16, 2007, the Office of the Associate Attorney General advised OIP that it had completed its records search and did not locate any records responsive to plaintiff's request.

12) By memorandum dated October 15, 2007, the Office of the Deputy Attorney General advised OIP that it had completed its records search and did not locate any records responsive to plaintiff's request.

13) Because plaintiff requested records from both current and former employees of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, and the records searches described above would encompass only the e-mail records of current employees,

-4-

OIP also itself conducted additional e-mail searches of former employees of these three Offices. In so doing, OIP determined which former employees were the most likely to have responsive records, and then conducted e-mail searches of the Enterprise Vault (EV Vault) for those custodians. The EV Vault maintains e-mails of former employees in the senior leadership offices of the Department. By conducting this search of likely records custodians' EV Vaults, OIP assured that any responsive records would be located.

14) As noted above, in conducting the EV Vault search, OIP first identified the former employees most likely to maintain records on the subject of plaintiff's request. Custodians were identified from a list of former employees in the EV Vault, using general information on the topic as well as the extensive personal experience of the FOIA Specialist assigned to plaintiff's request in conducting previous e-mail searches regarding the Congressional inquires into the replacement of U.S. Attorneys.

15) Once we identified the likely records custodians, the FOIA Specialist conducted a search of each individual's e-mails in the EV Vault using the terms "Mark McKinnon," "Maverick Media," and "Public Strategies" from March 8, 2007, the date of the first Congressional inquiry into the U.S. Attorney firings, to July 18, 2007, the date the search was conducted. Potentially responsive records were printed off for review, and subsequently reviewed to determine whether they were responsive to the request. No responsive records were located in the search of former employee's e-mails.

<div align="center">OIP's Interim Response to Plaintiff</div>

16) Upon completion of the records searches in the Offices of the Attorney General and Associate Attorney General, by letter dated August 6, 2007, OIP provided an interim response to

<div align="center">-5-</div>

plaintiff. OIP notified plaintiff that records searches were completed in the Offices of the Attorney

General and Associate Attorney General and no records responsive to the plaintiff's request were

located. We also advised that we were continuing our records search in the Office of the Deputy

Attorney General and would write to the plaintiff again once that search was completed. (A copy of

OIP's August 6, 2007 letter is attached hereto as Exhibit E.)

<u>OIP's Final Response to Plaintiff</u>

17) Finally, upon completion of the records search in the Office of the Deputy Attorney

General, by letter dated October 22, 2007, OIP provided a final response to plaintiff. OIP notified

plaintiff that the search in the Office of the Deputy Attorney General was complete and no records

responsive to the request were located. This letter also advised that OIP's processing of plaintiff's

request was completed. (A copy of OIP's October 22, 2007 letter is attached hereto as Exhibit F.)

<u>Plaintiff's Administrative Appeals</u>

18) By letter dated June 7, 2007, plaintiff administratively appealed the decision of the

Chief of Staff of OIP on behalf of the IR Staff, to deny plaintiff's request for expedited processing

pursuant to 28 C.F.R. § 16.5(d)(1)(ii). (A copy of plaintiff's June 7, 2007 administrative appeal is

attached hereto as Exhibit G.)

19) By letter dated June 15, 2007, the Associate Director of OIP, who is responsible for

adjudicating administrative appeals, advised plaintiff that she was affirming the IR Staff's denial of

plaintiff's request for expedition pursuant to standard ii because plaintiff was not "primarily

engaged in disseminating information." (A copy of the Associate Director of OIP's June 15, 2007

response to plaintiff's administrative appeal is attached hereto as Exhibit H.)

20) By letter dated July 10, 2007, plaintiff administratively appealed the denial of

-6-

plaintiff's request for expedited processing pursuant to 28 C.F.R. § 16.5(d)(1)(iv) made by the

Director of the Office of Public Affairs. (A copy of plaintiff's July 10, 2007 administrative appeal

is attached hereto as Exhibit I.)

21) By letter dated August 2, 2007, the Associate Director of OIP affirmed the Director of

PAO's determination to deny plaintiff's request for expedition pursuant to standard (iv) based on

her determination that, although the umbrella issue of the firings of the U.S. Attorneys had been

the subject of widespread and exceptional media interest, that was not the case with the particular

subject of plaintiff's request. (A copy of the Associate Director of OIP's August 2, 2007 letter is

attached hereto as Exhibit J.)

I declare under penalty of perjury that the foregoing is true and correct.


_____

MELANIE ANN PUSTAY


Executed this 13th day of November, 2007.

# EXHIBIT A

# CREW | citizens for responsibility and ethics in washington

May 23, 2007

**By fax (202-514-1009) and first-class mail**

Melanie Ann Pustay
Director, Policy and Litigation
Office of Information and Privacy
U.S. Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-0001

### Re: Freedom of Information Act Request

Dear Ms. Pustay:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, et seq.

Specifically, CREW seeks the following records:

(1) all emails sent to or from Mark McKinnon and any former or current Department of Justice ("DOJ") employee in the Offices of the Attorney General, Deputy Attorney General and/or Associate Attorney General concerning any aspect of the congressional inquiry into the firing of U.S. Attorneys;

(2) all emails sent to or from any individual or individuals at Maverick Media, Inc. and any former or current Department of Justice ("DOJ") employee in the Offices of the Attorney General, Deputy Attorney General and/or Associate Attorney General concerning any aspect of the congressional inquiry into the firing of U.S. Attorneys;

(3) all emails sent to or from any individual or individuals at Public Strategies, Inc. and any former or current Department of Justice ("DOJ") employee in the Offices of the Attorney General, Deputy Attorney General and/or Associate Attorney General concerning any aspect of the congressional inquiry into the firing of U.S. Attorneys.

Where possible, please produce records electronically, in PDF or TIF format on a CD-ROM.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977 (1972). As you are aware, a <u>Vaughn</u> index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the <u>Vaughn</u> index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" <u>Id.</u> at 224 (citing Mead <u>Data Central v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. <u>See</u> 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. <u>Mead Data Central</u>, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## <u>Fee Waiver Request</u>

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.11(k), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and expenditures, and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). <u>See, e.g.,</u> <u>McClellan Ecological v. Carlucci</u>, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the extent to which the Department of Justice, including with the assistance of the White House, has sought assistance from outside public relations companies to handle messaging and damage control from the controversy involving the Department's firing of U.S. Attorneys and the resulting controversy.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and

2

advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See http://foia.citizensforethics.org/home. Currently, CREW's website contains links to thousands of pages of documents CREW acquired from multiple FOIA requests. CREW's website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints, and Federal Election Commission complaints. As CREW's website demonstrates, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

## Request for Expedition

Pursuant to 5 U.S.C. § 552(a)(6)(E)(1) and 28 C.F.R. § 16.5(d)(iv), CREW requests that the Department of Justice expedite the processing of this request. As required by Department of Justice regulations, 28 C.F.R. § 16.5(d)(2), CREW is submitting its request for expedition to the Director of Public Affairs. A copy of CREW's request is enclosed.

CREW also requests that DOJ expedite its request pursuant to 28 C.F.R. § 16.5(d)(ii). As explained above, CREW is engaged primarily in the dissemination of information that it gathers from a variety of sources, including the FOIA, and seeks the information requested in this FOIA for the express purpose of disseminating it to the public. CREW's website contains numerous examples of its efforts, including reports it has published based on information it receives. CREW recently publishes a report, Without a Trace: The Story Behind the Missing White House E-Mails and the Violations of the Presidential Records Act, that details the record-keeping practices of the White House and how they violate federal records laws.

Moreover, there is a particular urgency in informing the public about the degree to which the varying public explanations DOJ has offered regarding the termination of nine U.S. Attorneys were shaped by the input and influence of Mark McKinnon and his companies. The actions of the DOJ in this regard have resulted in serious questions being raised about the integrity of DOJ. The public has a need to know the full facts underlying the differing justifications that high-level DOJ officials, including the Attorney General, have offered for their actions. Under these circumstances, CREW satisfies the requirements for expedition.

Pursuant to 28 C.F.R. § 16.5(d)(3), I hereby certify that the basis for CREW's request for expedition, as outlined above, is true and correct to the best of my knowledge and belief.

3

**Conclusion**

If you have any questions about this request or foresee any problems in releasing fully the requested records on an expedited basis, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

Enclosure

cc: Tasio Scolinos

4

# EXHIBIT B

# CREW | citizens for responsibility and ethics in washington

May 23, 2007

**By fax (202-514-5331) and first-class mail**

Tasio Scolinos
Director
Office of Public Affairs
U.S. Department of Justice
Room 1128
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Re:  FOIA Request for Expedition

Dear Ms. Scolinos:

Pursuant to U.S. Department of Justice ("DOJ") Freedom of Information Act ("FOIA") regulations, specifically 28 C.F.R. § 16.5(d)(2), Citizens for Responsibility and Ethics in Washington ("CREW") requests that its request for expedition of the enclosed FOIA request of this date be granted.[1]

CREW's request seeks emails sent to or from the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General and Mark McKinnon, Maverick Media, Inc. and Public Strategies, Inc. concerning any aspect of the congressional inquiry into the firing of U.S. Attorneys.

CREW requests expedition in light of the widespread and exceptional media interest in this matter and the questions that have been raised about not only DOJ's reasons for the firings, but also the differing public explanations DOJ has offered for its actions.  As a result, there are substantial concerns about the integrity of DOJ that affect public confidence in both the Attorney General and the agency that he heads.  See, e.g., Sean Cockerham, McKay Suggests Cover-Up in Prosecutor Case, *The Olympian*, May 20, 2007; Dan Eggen and Paul Kane, House GOP Stands Behind Gonzales, *The Washington Post*, May 11, 2007; Dan Eggen, Justice Dept. Won't Release All Documents Lawmakers Seek, *The Washington Post*, April 27, 2007.[2]  Newly released DOJ emails also show that the White House hired Mark McKinnon of Maverick Media Inc., who is

---

[1] CREW's FOIA is enclosed as Attachment 1.

[2] These articles are enclosed as Attachment 2.

also vice-chairman of Public Strategies Inc., "to handle damage control in the aftermath of the US attorney scandal." Matt Renner, White House Coordinated With GOP Consultant on US Attorney Scandal, *Truthout*, May 22, 2007 (enclosed as Attachment 3).

In light of this widespread and exceptional media interest and the possible questions about the government's integrity affecting public confidence, CREW satisfies the DOJ requirements for expedition. See 28 C.F.R. § 16.5(d)(1)(iv). Moreover, as CREW explained in its FOIA request, CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the FOIA, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains links to thousands of pages of documents CREW acquired from multiple FOIA requests, as well as documents related to CREW's FOIA litigation, Internal Revenue complaints and Federal Election complaints.

For the foregoing reasons, as well as those set forth in CREW's FOIA request of May 23, 2007, CREW requests that its FOIA request be expedited.

Pursuant to 28 C.F.R. § 16.5(d)(3), I hereby certify that the basis for CREW's request for expedition is true and correct to the best of my knowledge and belief.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

Enclosures

cc:  Melanie Ann Pustay

2

# EXHIBIT C



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                  *Washington, D.C. 20530*

Anne L. Weismann                             **JUN 0 4 2007**
Chief Counsel
Citizens for Responsibility and Ethics
  in Washington                              Re:  AG/07-R0617
1400 Eye Street, NW                               DAG/07-R0618
Suite 450                                         ASG/07-R0619
Washington, DC 20005                              CLM:MLF:GEB

Dear Ms. Weisman:

This is to acknowledge receipt of your letter dated May 23, 2007, which was received in
this Office on May 25, 2007, in which you requested copies of emails between former and current
Department of Justice employees in the Offices of the Attorney, Deputy Attorney General, and
Associate Attorney General and Mark McKinnon or Maverick Media, Inc. or Public Strategies, Inc.
regarding the Congressional inquiry into the firings of United States Attorneys. This response is
made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate
Attorney General.

You have requested expedited processing of your request under the Department's standard
permitting expedition for requests involving "[a]n urgency to inform the public about an actual or
alleged federal government activity, if made by a person primarily engaged in disseminating
information." 28 C.F.R. § 16.5(d)(1)(ii) (2006). Based on the information you have provided, I
have determined that your request for expedited processing under this standard should be denied
because the primary activity of your organization does not appear to be information dissemination,
which is required for a requester to qualify for expedited processing under this standard.

You have also requested expedited processing of your request pursuant to the Department's
standard permitting expedition for requests involving "[a] matter of widespread and exceptional
media interest in which there exist possible questions about the government's integrity which
affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). Pursuant to Department of Justice
regulations, we directed your request to the Director of Public Affairs, who makes the decision
whether to grant or deny expedited processing under this standard. See id. at § 16.5(d)(2). Please
be advised that as of the date of this letter, that determination is still pending with the Office of
Public Affairs. Once we have received notification of the Director's decision, we will notify you
promptly. Nevertheless, please be advised that your request has been assigned to a FOIA Specialist
in this Office and searches are being initiated in the Offices of the Attorney General, Deputy
Attorney General, and Associate Attorney General.

-2-

We have not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for this request.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact Ginae Barnett, the analyst processing your request, by telephone at the above number or you may write to her at the above address.

If you are not satisfied with the denial of your request for expedited processing, you may administratively appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, within sixty days from the date of this letter.  Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Laurie A. Day

for Carmen L. Mallon
Chief of Staff

# EXHIBIT D

**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

**JUN 27 2007**

Anne Weismann, Esq.
Chief Counsel
Citizens for Responsibility and Ethics
   in Washington                    Re:   AG/07-R0617
1400 Eye Street, NW                             DAG/07-R0618
Suite 450                                       ASG/07-R0619
Washington, DC 20005                            CLM:MLF:GEB

Dear Ms. Weismann:

     This is in regard to your Freedom of Information Act (FOIA) request dated May 23, 2007, which was received in this Office on May 25, 2007, in which you requested copies of emails between former and current Department of Justice employees in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General and Mark McKinnon or Maverick Media, Inc., or Public Strategies, Inc. regarding the Congressional inquiry into the firings of United States Attorneys. This response is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

     You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv) (2006). Pursuant to Department policy, the Director of Public Affairs makes the decision whether to grant or deny expedited processing under this category. See id. at § 16.5(d)(2). The Director has determined that the standard is not met because the subject of your request is not a matter of widespread and exceptional media interest. Accordingly, your request for expedited processing has been denied. Nevertheless, as we advised you in our letter dated June 4, 2007, your request has been assigned to a FOIA Specialist in this Office and is currently being processed.

     If you are not satisfied with Director of Public Affairs denial of your request for expedited processing, you may administratively appeal by writing to the Director, Office of Information and

-2-

Privacy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, within sixty days from the date of this letter.  Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Carmen L. Mallon
Chief of Staff

# EXHIBIT E



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                              *Washington, D.C. 20530*

AUG 0 6 2007

Anne Weismann, Esq.
Chief Counsel
Citizens for Responsibility and Ethics
  in Washington                              Re:    AG/07-R0617
1400 Eye Street, NW                                 DAG/07-R0618
Suite 450                                           ASG/07-R0619
Washington, DC 20005                                CLM:MLF:GEB

Dear Ms. Weismann:

        This is an interim response to your Freedom of Information Act (FOIA) request dated
May 23, 2007, which was received in this Office on May 25, 2007, in which you requested
copies of emails between former and current Department of Justice employees in the Offices of
the Attorney General, Deputy Attorney General, and Associate Attorney General and Mark
McKinnon or Maverick Media, Inc., or Public Strategies, Inc. regarding the Congressional
inquiry into the firings of United States Attorneys.  This response is made on behalf of the
Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

        Please be advised that record searches were conducted in the Offices of the Attorney
General and Associate Attorney General.  No records responsive to your request were located.
We are continuing our search in the Office of the Deputy Attorney General and will write to you
again once this search is completed.

        If you are not satisfied with my action on this interim response, you may administratively
appeal by writing to the Director, Office of Information and Privacy, United States Department of
Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, within sixty
days from the date of this letter.  Both the letter and the envelope should be clearly marked
"Freedom of Information Act Appeal."

                                        Sincerely,

                                        *Marilyn L. Falkner*

                                        Carmen L. Mallon
                                        Chief of Staff

# EXHIBIT F



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                         _Washington, D.C. 20530_


## OCT 2 2 2007

Anne Weismann, Esq.
Chief Counsel
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, NW
Suite 450                                        Re:   DAG/07-R0618
Washington, DC  20005                                  MAP:VRB:GEB

Dear Ms. Weismann:

     This is our final response to your Freedom of Information Act (FOIA) request dated May 23, 2007, which was received in this Office on May 25, 2007, in which you requested copies of emails between former and current Department of Justice employees in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General and Mark McKinnon or Maverick Media, Inc., or Public Strategies, Inc. regarding the Congressional inquiry into the firings of United States Attorneys.  This response is made on behalf of the Office of the Deputy Attorney General.

     In our interim response to you dated August 6, 2007, we advised that we were continuing to search for responsive records in the Office of the Deputy Attorney General.  That search is now complete, and no records responsive to your request were located.

     This completes our processing of your request.  Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that you have the right to file an administrative appeal.

                        Sincerely,

                        Melanie Ann Pustay

                        Melanie Ann Pustay
                        Director



**FILE COPY**

# EXHIBIT G

# CREW | citizens for responsibility and ethics in washington

June 7, 2007

**By facsimile (202 514-1009) and first-class mail**

Melanie Ann Pustay
Director, Office of Information and Privacy
U.S. Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-0001

Re: Freedom of Information Act Appeal

Dear Ms. Pustay:

By letter dated June 4, 2007, and received by Citizens for Responsibility and Ethics in Washington ("CREW") on June 6, 2007, Carmen L. Mallon, Chief of Staff for your office, advised me that CREW's request for expedition of its Freedom of Information Act ("FOIA") request of May 23, 2007, was denied. CREW hereby appeals that determination and requests that you reverse it for the reasons set forth below.

CREW's FOIA request of May 23, 2007,[1] sought copies of emails sent to or from Mark McKinnon, Maverick Media, Inc., and/or Public Strategies, Inc. and any current or former Department of Justice ("DOJ") employee in the Offices of the Attorney General, Deputy Attorney General and/or Associate Attorney General concerning the congressional inquiry into the firings of U.S. Attorneys. In accordance with 5 U.S.C. § 552(a)(6)(E)(i) and 28 C.F.R. §§ 16.5(d)(1)(ii) and 16.5(d)(1)(iv), CREW requested that DOJ expedite its processing of CREW's FOIA request. CREW's request for expedition pursuant to 28 C.F.R. § 16.5(d)(1)(iv) was made directly to DOJ's Office of Public Affairs, as DOJ regulations require.

In her letter of June 6, 2007, Ms. Mallon denied CREW's request for expedition made pursuant to 28 C.F.R. § 16.5(d)(1)(ii) "because the primary activity of your organization does not appear to be information dissemination, which is required for a requester to qualify for expedited processing under this standard." She noted that CREW's additional request for expedition pursuant to 28 C.F.R. § 16.5(d)(1)(iv) was still pending with the Office of Public Affairs.

---

[1] Ms. Mallon claims in her letter that your office received our FOIA request on May 25, 2007. Our fax cover sheet (attached) shows that our FOIA request, which was faxed to your office on May 23, 2007, was received by your office on May 23, 2007.



This determination is wrong as a matter of law and fact. As CREW explained in its request for expedition, CREW is a non-profit corporation engaged primarily in the dissemination of information that it gathers from a variety of sources, including the FOIA, and seeks the information requested in its FOIA request of May 23, 2007, for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts, including reports it has published based on information it receives. For example, CREW recently published a report, <u>Without a Trace:  The Story Behind the Missing White House E-Mails and the Violations of the Presidential Records Act</u>, that details the record-keeping practices of the White House and how they violate federal records laws. Moreover, CREW has established in interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. <u>See</u> http://foia.citizensforethics.org/home. CREW's websites currently contain links to thousands of pages of documents CREW acquired from multiple FOIA requests. As CREW's website demonstrates, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use. Dissemination of information to the public is at the core of CREW's central mission.

On the basis of this record there can be no legitimate question that because CREW is engaged primarily in the dissemination of information, CREW satisfies the criteria for expedition. As with the Electronic Privacy Information Center and the ACLU, two organizations that the courts have found satisfy this criteria,[2] CREW "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'" <u>ACLU</u>, 321 F.Supp.2d at 30 n.5, *quoting* <u>EPIC</u>, 241 F.Supp.2d at 11.

CREW's request for expedition also explained that there is a particular urgency in informing the public about the degree to which the varying public explanations DOJ has offered regarding the termination of nine U.S. Attorneys were shaped by the input and influence of outside media consultants such as Mark McKinnon and his companies. The actions of DOJ in this regard have resulted in serious questions being raised about the integrity of DOJ. The public has a need to know the full facts underlying the differing justifications that high-level DOJ officials, including the Attorney General, have offered for their actions. Ms. Mallon's letter of June 6, 2007, does not dispute this urgency.

---

[2] <u>See</u> <u>ACLU v. U.S. Dep't of Justice</u>, 321 F.Supp.2d 24, 30 (D.D.C. 2004); <u>EPIC v. Dep't of Defense</u>, 241 F.Supp.2d 5, 11 (D.D.C. 2003).

2

Under these circumstances, CREW satisfies fully the criteria for expedition of its FOIA request. Ms. Mallon's initial determination to the contrary rests solely on a single statement that is factually and legally erroneous. Accordingly, the initial determination of your office denying CREW's request must be reversed.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

enclosure

3

# EXHIBIT H

U.S. Department of Justice

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

JUN 15 2007

Anne L. Weismann, Esq.
Citizens for Responsibility and Ethics
  in Washington                    Re:    Appeal No. 07-1631
Suite 450                                 Request Nos. AG/07-R0617,
1400 Eye Street, NW                       DAG/07-R0618 and ASG/07-R0619
Washington, DC 20005                      JTR:KM

Dear Ms. Weismann:

        You appealed from the action of the Initial Request Staff (IR Staff) of the Office of
Information and Privacy, acting on behalf of the Offices of the Attorney General, Deputy
Attorney General, and Associate Attorney General, on your request for access to copies of e-mail
messages between former and current Department of Justice employees and Mark McKinnon,
Maverick Media, Inc., or Public Strategies, Inc. regarding the Congressional inquiry into the
several resignations of United States Attorneys. Specifically, you appealed the decision of the IR
Staff to deny your request for expedited treatment of your request for records.

        In your request for expedited treatment to the IR Staff, you requested expedited treatment
pursuant to the second standard enumerated in the Department of Justice's regulations. Under the
second standard, you must show that there is "[a]n urgency to inform the public about an actual
or alleged federal government activity, if made by a person primarily engaged in disseminating
information." 28 C.F.R. § 16.5(d)(1)(ii) (2006). This letter addresses your appeal from the
denial of expedited treatment by the IR Staff and does not address your pending request for
expedited treatment that was made directly to the Department of Justice's Office of Public
Affairs.

        After carefully considering your appeal, I am affirming the IR Staff's action in denying
your request for expedited treatment. I have determined that you have not met your burden under
this standard because you have not met the threshold inquiry of being "primarily engaged in
disseminating information." Id. § 16.5(d)(1)(ii). Although Citizens for Responsibility and Ethics
in Washington (CREW) may well engage in the dissemination of information, you have not
demonstrated that it is "primarily engaged" in disseminating information. See ACLU of N. Cal.
v. U.S. Dep't of Justice, No. 04-4447, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005)
("[T]he court agrees with defendants that while dissemination of information may be a main
activity of ACLU-NC, there is no showing that it is the main activity."). Indeed, CREW's own
Web site describes itself as:

_K-10_

a nonprofit . . . organization dedicated to promoting ethics and accountability in government and public life by targeting government officials -- regardless of party affiliation -- who sacrifice the common good to special interests. CREW advances its mission using a combination of research, litigation and media outreach. CREW employs the law as a tool to force officials to act ethically and lawfully and to bring unethical conduct to the public's attention through: Litigation[;] Freedom of Information Act Requests[;] Ethics Complaints[;] Internal Revenue Service Complaints[;] Federal Election Commission Complaints[; and] Requests for investigations[.]

"CREW: About CREW," http://www.citizensforethics.org/about.html (last visited June 13, 2007). CREW's Web site emphasizes its use of "high-impact legal actions to target government officials who sacrifice the common good to special interests." Id. Notably, the dissemination of information is not listed as the main activity. Indeed, according to the Web site, dissemination of information appears to play a minor role comparatively in CREW's daily business. Thus, you have not demonstrated that CREW is "primarily engaged" in disseminating information. Without such a showing, expedited processing pursuant to the second standard is not warranted. Accordingly, the IR Staff properly denied your request for expedited treatment under the second standard.

If you are dissatisfied with my action on your appeal for expedited treatment of your request, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(6)(E)(iii).

Sincerely,

Janice Galli McLeod
Associate Director

# EXHIBIT I

# CREW | citizens for responsibility and ethics in washington

July 10, 2007

*[handwritten: 7OIA (A)]*
*[handwritten: 1. 07-1934 2.]*
*[handwritten: 2. 07-1935]*
*[handwritten: ASG/07-R0619]*
*[handwritten: 2. DAG/07-R0618]*

Melanie Ann Pustay
Director, Office of Information and Privacy
U.S. Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-0001

*[handwritten: Expedite]*

**RECEIVED**   *[handwritten: —7 Km]*

JUL 12 2007

Office of Information and Privacy

Re:  Freedom of Information Act Appeal

Dear Ms. Pustay:

By letter dated June 27, 2007, and received by Citizens for Responsibility and Ethics in Washington ("CREW") on July 2, 2007, Carmen L. Mallon advised CREW that its request for expedition of its Freedom of Information Act ("FOIA") request of May 23, 2007, was denied.[1] CREW hereby appeals that determination and requests that you reverse it for the reasons set forth below.

CREW's FOIA request of May 23, 2007,[2] with the Office of Public Affairs, sought copies of emails sent to or from Mark McKinnon, Maverick Media, Inc., and/or Public Strategies, Inc. and any current or former Department of Justice ("DOJ") employee in the Offices of the Attorney General, Deputy Attorney General and/or Associate Attorney General concerning the congressional inquiry into the firings of U.S. Attorneys. In accordance with 5 U.S.C. § 552(a)(6)(E)(I) and 28 C.F.R. §§ 16.5(d)(1)(ii) and 16.5(d)(1)(iv), CREW requested that DOJ expedite its processing of CREW's FOIA request. CREW's request for expedition pursuant to 28 C.F.R. § 16.5(d)(1)(iv) was made directly to DOJ's Office of Public Affairs, as DOJ regulations require.

In her letter of June 27, 2007, Ms. Mallon denied CREW's request for expedition made pursuant to 28 C.F.R. § 16.5(d)(1)(iv) "because the subject of your request is not a matter of widespread and exceptional media interest."

This determination is wrong as a matter of law and fact. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] On June 15, 2007, CREW received a letter from Janice McLeod, Associate Director for the Office of Information and Privacy, in which she confirmed her Office's decision to deny CREW's expedited processing appeal of June 7, 2007. CREW sent out two FOIAs on May 23, 2007 - - one to the Office of Information and Privacy, and the other one, at issue here, to the Office of Public Affairs, seeking essentially the same information.

[2] Ms. Mallon claims in her letter that your office received our FOIA request on May 25, 2007. Our fax cover sheet (attached) shows that our FOIA request, which was faxed to your office on May 23, 2007, was received by your office on May 23, 2007.

widespread and exceptional media interest in which there exists possible questions about the government's integrity, but as CREW explained in its request for expedition, there is a particular urgency in informing the public about the degree to which the varying public explanations DOJ has offered regarding the termination of nine U.S. Attorneys were shaped by the input and influence of outside media consultants such as Mark McKinnon and his companies. In our original FOIA request, CREW cited four articles that detail the DOJ's public explanations of the US Attorney firings and the hiring of McKinnon and his companies to handle damage control. We have included an additional six articles regarding the same with this appeal.

Each of these articles highlight the fact that there is widespread and exceptional media interest in this subject matter for which we seek documents. For example, in one article, details emerge that within the hundreds of emails released by the Justice Department concerning the firing of the US Attorneys, some of the emails showed that Monica Goodling approved White House aide Chris Oprison's suggestion that department talking points be given to Mark McKinnon, a media strategist who worked with presidential adviser Karl Rove during Bush's campaigns. Laurie Kellman, Congress Oks bill limiting White House power to appoint prosecutors; Bush expected to sign, *The Associated Press*, May 22, 2007.

Moreover, the actions of the DOJ have resulted in serious questions being raised about the integrity of DOJ. The public has a need to know the full facts underlying the differing justifications that high-level DOJ officials, including the Attorney General, have offered for their actions, and the use of McKinnon's media relations' companies to spin these justifications. Ms. Mallon's letter of June 27, 2007, does not dispute the media interest or urgency in this regard.

On the basis of this record there can be no legitimate question that this is a matter of widespread and exceptional media interest in which there are questions about the DOJ's integrity. Also, there is a particular urgency in informing the public of the requested information as the information is a breaking news story that will lose its value if there is a delay in obtaining these documents. 5 U.S.C. § 552(a)(6)(E)(v)(II); ACLU v. DOD, 2006 U.S. Dist. LEXIS 36888 (N.D. Cal. May 25, 2006).

Under these circumstances, CREW satisfies fully the criteria for expedition of its FOIA request. Ms. Mallon's initial determination to the contrary rests solely on a single statement that is factually and legally erroneous. Accordingly, the initial determination of your office denying CREW's request must be reversed.

Sincerely,

Kimberly D. Perkins
Counsel

enclosure

2

FOCUS - 16 of 18 DOCUMENTS

Cox News Service

March 13, 2007 Tuesday

# GONZALES REFUSES TO RESIGN AS CONGRESS DEMANDS ANSWERS

**BYLINE:** REBECCA CARR and KEN HERMAN

**SECTION:** Washington General News

**LENGTH:** 2074 words

WASHINGTON - Attorney General Alberto Gonzales rebuffed calls for his resignation Tuesday as lawmakers demanded answers about the White House's role in the firing of U.S. attorneys across the country.

"I believe in accountability," said Gonzales, speaking at a hastily arranged news conference to fend off attacks from Congress. "I acknowledge that mistakes were made here.? I accept that responsibility and my pledge to the American people is to find out what went wrong here, to assess accountability, and to make improvements so that the mistakes in this instance do not occur again in the future."

Gonzales' mea culpa was the latest in a series of recent events that have forced the administration into damage-control mode.

Last week, Gonzales and FBI Director Robert Mueller acknowledged that his agency improperly used surveillance techniques.

Also last week, the administration dealt with the fallout from the federal conviction of I. Lewis "Scooter" Libby, former chief of staff for Vice President Cheney for lying to FBI agents investigating the disclosure of a CIA operative.

The verdict came as the administration scrambled in the wake of reports of squalid conditions at an outpatient facility at Walter Reed Army Medical Center.

In many of the situations, the White House has adopted the lessons-learned mode it first employed after its botched response to Hurricane Katrina where officials accept blame and take action.

"I've overcome a lot of obstacles in my life to become attorney general,"

Gonzales said. "I am here not because I give up.? I am here because I've learned from my mistakes, because I accept responsibility, and because I am committed to doing my job.? And that is what I intend to do here on behalf of the American people."

But apologies did little to stave off both Republicans and Democrats in Congress.

Sen. Charles E. Schumer called for Gonzales' ouster as Sen. Patrick Leahy, chairman of the Senate Judiciary Committee, called for open hearings featuring

White House and Justice Department officials. Key Republicans agreed that hearings are in order.

Sen. John Cornyn, R-Texas, a long-time friend of Gonzales from their days in Texas, said that the dismissal of

U.S. attorneys has not been handled well by the

Justice Department. He said he supports Judiciary Committee's inquiry, noting that in Texas there is always "a trial before a hanging."

"We ought to follow the facts wherever they lead," Cornyn said. "This should not be a partisan issue. It should be one of oversight and I support Senator Leahy to get to facts."

Leahy said he was "angered" to discover in the Washington Post and New York Times early Tuesday morning that internal e-mails and documents show that there was collusion between the White House and the Justice Department to dismiss U.S. attorneys around the country. He vowed to have hearings as soon as possible because the testimony so far "has not been complete."

Deputy Attorney General Paul McNulty and other Justice Department officials have told Congress under oath that the decision to fire the eight U.S. attorneys was made by the Justice Department without intervention by the White House.

The documents released Tuesday show that Harriet Miers, the White House legal counsel suggested two years ago that the Justice Department fire all 93 U.S. attorneys across the country.

"Obviously, I am concerned about the fact that information-incomplete information was communicated or may have been communicated to the Congress," Gonzales said.

Gonzales said that he did not agree with that proposal from Miers. He approved the dismissal of a smaller group of prosecutors. He assigned D. Kyle Sampson, his chief of staff, to handle the matter.

Sampson resigned on Monday, reportedly after he admitted that he did not tell his bosses about the extent of his many discussions with the White House about removing the prosecutors. That led to incomplete testimony before Congress-a fact that lawmakers seized upon.

"Time and time again, we've heard falsehoods," said Schumer in a floor speech immediately after Gonzales held his press conference.

"We were told by the attorney general that he would "never ever make a change for political reasons,'" Schumer said. "It now turns out all this was false, as the evidence makes clear that this purge was based purely on politics - to punish prosecutors who were perceived to be too light on Democrats or too tough on Republicans."

The batches of e-mails and internal documents indicated that the Justice Department had not fully explained the White House's role in the dismissal of seven top prosecutors in December and another a few months earlier.

In a Sept 13, 2006, e-mail to Miers, Sampson listed one dismissed prosecutor, Bud Cummins in Arkansas, ``in the process of being pushed out.'' Five other prosecutors -- in Arizona, Nevada, Grand Rapids, Mich., San Diego and Seattle -- were listed as U.S. attorneys ``we should now consider pushing out.''

Four days later, Miers responded: ``Kyle, thanks for this. I have not forgotten I need to follow up on the info but things have been crazy.''

But nearly three months later, Sampson wrote to another aide that they were still waiting for White House approval.

``Still waiting for green light from White House,'' Sampson wrote in a Dec. 2, 2006, e-mail to Michael Elston, McNulty's top aide.

Two days later, the White House deputy counsel sent Sampson an e-mail indicating that they were "a go for the US Atty plan."

Both the House and Senate Judiciary committees are investigating whether the attorneys were dismissed for political reasons. At the time of their ouster, five of the eight were involved with political corruption investigations of Republicans.

Bush, in Mexico on the penultimate day of his trip to Latin America, had no comments Tuesday on the developments. But spokesman Tony Snow sought to downplay the firings and said Bush remains supportive of Gonzales, his long-time friend and aide.

The episode began, according to Snow, with Miers' reference to bringing in "fresh blood" after the 2004 re-election. But he said her suggestion to ask all 93 U.S. attorneys to resign "was quickly rejected by the Justice Department."

"Nobody at the White House was involved in suggesting the firing of 93 attorneys," Snow said. "It was not a firm recommendation that you're firing everybody."

Bush, Gonzales and other Justice Department officials discussed the matter in a White House meeting last October, Snow said. The contact was appropriate because it dealt with administration concerns over whether reports of voter fraud were being pursued with sufficient vigor, he said.

"If somebody had passed on a concern about vote fraud allegations and we had not passed it on, can you imagine the kind of second-guessing we would have?" Snow said, adding, ``You're not making recommendations, you're not issuing pressure, you're not saying `Fire somebody!'"

No specific U.S. attorneys were discussed during the session, according to Snow, who said Bush was unaware of Miers' proposal to fire all of them.

"We don't have anything to indicate the president made any calls on specific U.S. attorneys," Snow said.

The documents prompted an outcry from ethics advocates and presidential candidates alike.

Democratic contender John Edwards called for Gonzales to resign. Citizens for Responsibility and Ethics in Washington sent a letter to Gonzales asking for the immediate appointment of a special prosecutor to investigate potential criminal violations related to the recent dismissals of the eight U.S. attorneys.?

And House Speaker Nancy Pelosi, D-Calif., said the House would vote next week on a bill that would repeal a Patriot Act provision giving the attorney general the right to appoint U.S. attorneys for an indefinite amount of time.

"Essential to our democracy is an independent judicial system," Pelosi said.

"Our U.S. attorneys are on the front lines in the fight against terrorism and public corruption, and violent crime."?

Federal law provides that if Sampson knew that he was causing DOJ officials to make inaccurate statements to Congress, then he can be prosecuted for the federal crime of lying to Congress even though he did not personally make any statements to Congress, said Melanie Sloan, executive director of the nonpartisan ethics group.

? A special prosecutor should investigate not only Mr. Sampson's conduct but whether anyone else was involved in formulating the incomplete and erroneous congressional testimony or whether the officials who testified were aware that they were providing imperfect information to Congress, Sloan said.

But some Bush loyalists, while acknowledging the challenging series of events, insisted the administration is not on its last legs.

"They may be down, but they're not out," said Mark McKinnon, Bush's campaign media adviser who is now working in Sen. John McCain's presidential campaign. "And until they're out, I think they'll continue to demonstrate resolve to make progress and get things done. There are many chapters still left to write before this book is over."

At the Washington-based New America Foundation, Michael Lind, author of "Made in Texas: George W. Bush and the Southern Takeover of American Politics," cautioned against overestimating the damage done to the White House.

Lind is a Bush critic who has said the president's handling of Iraq will relegate him to a list of the five worst U.S. presidents.

"I think that they have more power than you might think because their essential strategy was shaped by people like Cheney and (former Defense Secretary Donald) Rumsfeld and others who were veterans of the Nixon administration," Lind said.

As such, he said, they worked to restore presidential power they believe was unfairly weakened in the post-Watergate era.

"It would be a mistake to underestimate the autonomy of the American president, particularly one who does not have to be re-elected," Lind said. "He is very confident, if not stubborn."

"So when they are caught they may try to get the thing off the news cycle as quickly as possible," Lind said. "But that does not mean they are not doing five other things we don't know about that just haven't been exposed yet."

Kathleen Hall Jamieson, dean of the Annenberg Public Policy Center at the University of Pennsylvania, said the administration's woes have put Bush at a precariously low point.

"The public starts out assuming an administration is competent," she said. "At a certain point, the presumption is that it may not be. And you reach a certain point in which the problems an administration is having begin to aggregate and the public begins to ask whether everything is political."

"I think we are at that point now with the current administration," she said, noting that Bush's popularity was low - largely as a result of Iraq - before the most recent problems.

The problems, she said, are complicated by the congressional investigation and subpoena power that voters handed to Democrats last November.

"You are already seeing a lot of hearings," Jamieson said. "You are going to see a lot of subpoenas."

She recalled that President Nixon, at the height of Watergate, retained the support of a quarter of the populace.

"I always assumed that was the floor. President Bush is not very much above that now," Jamieson said.

(Story can end here; optional add follows)

Bruce Buchanan, a University of Texas government professor and longtime observer of Texas politics, said that Cornyn's support of Leahy was "out of character."

But Buchanan said he could not tell whether Cornyn's remarks were prompted by belief that an investigation would exonerate the White House or because he "perceives the matter has gotten so far out of hand that now is the time for him to jump ship."

"That ship has taken on enough water that some Republicans have started to jump off on various issues," Buchanan said. "He could be joining that crowd, which is unusual because of his diehard support until now."

Buchanan, noting that U.S. attorneys are political appointees and that President Clinton dismissed all 93 of them when he took office, said the firings are not the problem.

"This is much ado about nothing except for the ham-handed handling of it. Clinton fired 93 of them. That in itself is not a problem. The problem is they are handling it like they feel guilty," Buchanan said.

Rebecca Carr's e-mail is rcarr@coxnews.com

Ken Herman's e-mail is kherman@coxnews.com

On the Web:

Justice Department:

http://www.usdoj.gov/

LOAD-DATE: March 14, 2007

LANGUAGE: ENGLISH

PUBLICATION-TYPE: Newswire

Copyright 2007 Cox Enterprises, Inc.

4 of 848 DOCUMENTS

Salon.com

May 22, 2007 Tuesday

# The Justice Department vs. Joe Conason

**BYLINE:** Joan Walsh

**SECTION:** JOAN WALSH - MISC

**LENGTH:** 517 words

**HIGHLIGHT:** How **Mark McKinnon** helped the White House fight the Salon columnist's charges against Alberto Gonzales.

Some of the Justice Department documents dumped last night depict frantic efforts by administration underlings to wildly spin the firing of eight U.S. attorneys after aggressive reporters began poking holes in the explanation that they were let go for "performance" reasons. I particularly enjoyed a sequence in which the infamous Bush strategist **Mark McKinnon** asks for help combating Joe Conason's Feb. 9 Salon column about the attorney purge, "Alberto Gonzales' Coup d'état."

When the ultimate Bush history is written, McKinnon himself will be an interesting footnote. A political strategist for Texas Gov. Ann Richards before he hooked up with Bush, McKinnon was crucial to the myth-making that Bush was a different kind of Republican, congenial to Democrats like McKinnon, determined to fight for the poor and minorities -- a compassionate conservative. McKinnon now runs his own consulting business, Public Strategies, but in the e-mail dump last night, he's found writing to Pete Wehner in the Office of Strategic Initiatives -- yes, a White House think tank created by Karl Rove -- about the Conason column. "Pete, I don't think Conason is generally worth responding to, but do we have something off the shelf on this? Thanks, mck." Wehner scrambles, asking Chris Oprison in the White House counsel's office whether someone there would be able to send him "a response to the charges by Joe Conason, which I could pass along to **Mark McKinnon**?" The ever-obliging Monica Goodling comes up with a 13-page document, complete with "Fact Sheets," "Talking Points" and "Examples of Difficult Transitions." She assures Obrison he can share the document with McKinnon, because "it is all information we have given to friendlies on the Hill." Goodling, remember, categorizes people as "loyal Bushies" and now "friendlies," a sophisticated taxonomy that's no doubt just another benefit of her rigorous education at Regent University.

I asked Conason what he thought about the spin job, and he shared with me an e-mail exchange he had with McKinnon. Once upon a time, back in 1999, McKinnon spun Conason on the wisdom and mercy of Texas Gov. George W. Bush, and Conason elaborated on that memory in his e-mail to McKinnon.

Dear Mark,

I see in the latest DOJ document dump that you asked the White House for a

response to my column of last February 9. Believe me when I say how flattered I feel, even though you think I'm not "generally worth responding to." I guess we'll find out more when Monica testifies, eh? Your Monica, I mean.

I haven't thought about you for a while. But seeing that little memo brought back fond memories of our breakfast in Austin back in 1999 with Stu Stevens, eating those tasty tortillas and listening to you wax on about all the great things Dubya was going to do for the poor folks, and how that made you well up a bit.

I sure hope he's lived up to your expectations. The rest of us are somewhat disappointed. Very best regards,

Joe

Within an hour, McKinnon replied:

Touche Joe.

Maybe someday in the future, we can break tortillas in New York City somewhere and reflect about all this.

McK

**LOAD-DATE:** May 23, 2007

**LANGUAGE:** ENGLISH

**PUBLICATION-TYPE:** Web Publication

Copyright 2007 Salon.com, Inc.
All Rights Reserved

FOCUS - 6 of 18 DOCUMENTS

Salon.com

May 22, 2007 Tuesday

# The purge, the spin and KR@georgewbush.com

**BYLINE:** Tim Grieve

**SECTION:** WAR ROOM

**LENGTH:** 1073 words

**HIGHLIGHT:** Newly released documents show damage-control efforts at the White House and the Justice Department.

On the same day that the chairman of the House Judiciary Committee threatened the White House with "compulsory process" if it doesn't start cooperating with a congressional investigation into the firing of U.S. attorneys last year, the Justice Department has turned over a new set of purge-related documents.

We don't know which came first -- the threatening letter or the document dump -- but we do know that this latest round of documents reveals, with more clarity than before, just how hard the White House and the Department of Justice worked to spin away the problems caused by the firings of federal prosecutors:

Famous last words. On Dec. 18, 2006, the Justice Department's Rebecca Seidel sent an e-mail to several of her colleagues warning them that Republican Sen. Jon Kyl was "significantly disturbed" over the firing of U.S. Attorney Paul Charlton and might raise the matter at an upcoming hearing. "We should ensure that the AG is adequately prepared to deal with a question over the firings of the USAs," she wrote. "Do we need a paper on it, or is the AG prepared?" Associate Deputy Attorney General William Moschella brushed her off: "I don't think he will raise this in public," he said of Kyl. As a short-term matter, Moschella was right: Rather than raising any questions about Charlton during Alberto Gonzales' Jan. 18 appearance before the Senate Judiciary Committee, Kyl praised the attorney general for his work on terrorism and internet gambling.

A Joe Conason column. On Feb. 9, Salon published a column in which Conason argued that the firing of eight U.S. attorneys last year -- we now know it was nine -- represented "a violation of American law enforcement traditions and . . . a triumph of patronage over competence." Shortly thereafter, Mark McKinnon, the former chief media advisor for the Bush-Cheney campaign, sent an email message to Peter Wehner, who runs the White House Office of Strategic Initiatives, a Karl Rove invention that the Washington Post has said amounts to "the closest thing the White House has to an in-house think tank."

Why was a private media consultant, who now works for John McCain, communicating with a Rove deputy about Conason's column about firings at the Justice Department? That's not clear from the e-mail chain. What is clear: McKinnon forwarded the column to Wehner, told him that he didn't think Conason was "generally worth responding to" -- don't be hurt, Joe; they feel the same way about the U.S. Senate

-- but wondered if there was something "off the shelf" he could use in response to the column. Wehner forwarded the request to Christopher Oprison at the White House Counsel's Office, with copies going to now-departed Gonzales aides Monica Goodling and Kyle Sampson. Goodling responded, providing Oprison with a set of documents she identified as "the relevant talkers and statistics" but noting, "We do not have a canned editorial response." When Oprison asked Goodling if it was OK to pass along the information to McKinnon, she said yes because it had already been given to "friendlies on the Hill."

The curious quotation marks. On Feb. 26, Oprison sent a message to Goodling in which he said he needed "to chat about the 'performance evaluations' for the departing U.S. attorneys." He asked her to call him -- some things are better handled outside the White House e-mail system, apparently -- and said that it's a "time sensitive issue for Tony." Tony? Tony? The first Tony that comes to our mind is White House Press Secretary Tony Snow, who might indeed have been expecting, at that point, to be facing questions about the purge.

An e-mail to Karl Rove? On Feb. 28, Special Assistant to the President Scott Jennings sent an "urgent" and "high importance" e-mail to a small group that included Gonzales Chief of Staff Kyle Sampson, White House Counsel Fred Fielding, Deputy White House Press Secretary Dana Perino and somebody with the address "KR@georgewbush.com" The news: Sen. Pete Domenici's chief of staff had just called to warn the White House that fired New Mexico U.S. Attorney David Iglesias would be holding a press conference that day in which he'd say that two members of Congress had pressured him to bring indictments in a politically charged corruption case -- and that he believed his refusal to do so may have had something to do with his firing.

Jennings told Fielding, Perino and KR that he would be available to discuss the matter further because, in his words, "once this happens in Albuquerque, the reporters will be asking DOJ and the White House." Jennings told the group that, according to Domenici's chief of staff, "Domenici's idea is not to respond" to Iglesias' allegations "and hopefully make this a one-day story." And indeed, when he was first asked about Iglesias' allegations, Domenici said: "I have no idea what he's talking about." Only later did he admit that he was one of the two members of Congress who had called Iglesias about the case -- and that he regretted doing so.

Missing the talking points. When Justice Department spokesman Brian Roehrkasse received a copy of Jennings' e-mail, he responded with the operative, if impolitic, question: "My question is why would members of Congress and a U.S. attorney be discussing the timing of a criminal indictment?"

Heck of a Job, Brian. On March 3, Roehrkasse forwarded to his Justice Department colleagues a copy of a Washington Post story on the purge that he said was "far better than most recent Post stories on this subject." The piece minimized White House involvement in the purge; quoting sources, it said that the White House had approved the list of prosecutors to be fired only after "senior Justice Department officials identified the prosecutors they believed were not doing enough to carry out President Bush's policies on immigration, firearms and other issues." For the folks working the issue at the Department of Justice, that amounted to a victory. Deputy Attorney General Richard Hertling declared the Post's piece "by far and away the best story I've seen on the subject" and expressed relief that an accompanying Post editorial -- "The Justice Department's firing of a group of U.S. attorneys is neither as sinister as critics suggest nor as benign as the department would have you believe" -- was "not a bad beating, though against our interests."

"Great work, Brian," Sampson said in an e-mail to group. "Kudos to you and the [deputy attorney general]."

**LOAD-DATE:** May 22, 2007

**LANGUAGE:** ENGLISH

**PUBLICATION-TYPE:** Web Publication

Copyright 2007 Salon.com, Inc.
All Rights Reserved

FOCUS - 9 of 18 DOCUMENTS

The Associated Press

May 22, 2007 Tuesday 1:11 AM GMT

# Bush defends Gonzales, calls plans for no-confidence vote 'political theater'

**BYLINE:** By BEN FELLER, Associated Press Writer

**SECTION:** WASHINGTON DATELINE

**LENGTH:** 827 words

**DATELINE:** CRAWFORD Texas

President Bush insisted Monday that embattled Attorney General Alberto Gonzales still has his support and denounced Democratic plans for a no-confidence vote as "pure political theater."

"He has done nothing wrong," Bush said in an impassioned defense of his longtime friend and adviser during a news conference at his Texas ranch.

Despite Bush's comments, support for Gonzales is eroding, even in the president's own party. The Senate is prepared to hold a no-confidence vote, possibly by week's end, and five Republican senators have joined many Democrats in calling for Gonzales' resignation.

The attorney general is under investigation by Congress for last year's ousters of eight federal prosecutors.

He is also under fire for an alleged 2004 hospital visit, as White House counsel, to have the then-ailing Attorney General John Ashcroft certify the legality of Bush's controversial warrantless eavesdropping program. The visit was detailed last week by former Deputy Attorney General Jim Comey.

In Washington, the Justice Department released a new batch of documents linked to the firings in anticipation of House testimony Wednesday by Monica Goodling, Gonzales' former counsel and White House liaison.

The Justice Department has maintained the firings planned in part by Goodling targeted underperforming U.S. attorneys. But Democrats believe they were politically motivated, and pointed Monday to e-mails between Goodling and White House political staffers about how to respond to the firestorm the dismissals created.

At one point, in mid-February, Goodling offered talking points and testimony by Deputy Attorney General Paul McNulty as part of a White House effort to respond to a story in the online magazine Salon.

"Monica, other than the McNulty testimony, is any of this material public and can it be disseminated to Mark McKinnon?" White House aide Chris Oprison asked Goodling in a Feb. 15 e-mail. McKinnon was Bush's political media consultant and

now works for the presidential campaign of John McCain.

"It is info we have given to friendlies on the Hill," Goodling responded. "It can all go."

The president told the Democrats to get back to more pressing matters. He did not directly answer a question about whether he intended to keep Gonzales in office through the end of his presidency regardless of what the Senate does.

"I stand by Al Gonzales, and I would hope that people would be more sober in how they address these important issues," Bush said. "And they ought to get the job done of passing legislation, as opposed to figuring out how to be actors on the political theater stage."

Gonzales does not necessarily need Congress' support to continue serving. But Bush and Gonzales are under increasing pressure as more lawmakers demand the attorney general's departure.

Democrats pressed ahead with plans to put the Senate on record in expressing a lack of confidence in him.

"The president should understand that while he has confidence in Attorney General Gonzales, very few others do," said Sen. Chuck Schumer, D-N.Y., in response to Bush's comments.

Gonzales leaves Tuesday for Europe, where he will attend the G-8 summit in Munich.

The new documents highlight the Justice Department's attempts to manage the firings controversy.

An undated document marked "PRIVACY ACT PROTECTED" offers responses to potential questions about why each fired prosecutor was dismissed. Its unidentified author suggests that former U.S. attorney Margaret Chiara in Grand Rapids, Mich., be rewarded for her public silence with minimal public criticism. However, the letter advised to describe Chiara as having "lost the confidence" of her staff if a more explicit answer was demanded.

A chart compiled by Goodling, dated Feb. 12, panned the leadership abilities of the eight fired prosecutors and compared them with years of mostly complimentary peer reviews each received.

For example, Seattle prosecutor John McKay showed a "pattern of insubordination, poor judgment, and demonstration of temperament issues," according to his leadership evaluation, which was compiled by Justice officials. His peer review, by contrast, called McKay "an effective, well-regarded, and capable leader."

Justice officials also highlighted New Mexico prosecutor David Iglesias, appearing to question why he was included among those fired.

"I didn't remember Iglesias being on list, but I could be mistaken," wrote Deputy Assistant Attorney General Rebecca Seidel to fellow Justice legislative aide Nancy Scott-Finan in a Dec. 19 e-mail about the resigning prosecutor's letter to his staff.

A month later, John Nowacki, a deputy in the Justice office that oversees U.S. attorneys, alerted fellow staffer David T. Best to "if you still have them, please hold the resignation letters from USA Iglesias to the President and the AG."

"If they've already gone, please let me know," Nowacki wrote.

Associated Press writers Laurie Kellman and Lara Jakes Jordan contributed to this report from Washington.

**LOAD-DATE:** May 22, 2007

**LANGUAGE:** ENGLISH

**PUBLICATION-TYPE:** Newswire

Copyright 2007 Associated Press
All Rights Reserved

**Public Relations Expert's Role in Attorney Firing Probed**
By Matt Renner
t r u t h o u t | Report

Tuesday 12 June 2007

Following a report by Truthout, a Washington, DC watchdog group recently issued a Freedom of Information Act (FOIA) request for records of contacts between the Department of Justice (DOJ) and a high-ranking Republican campaign strategist and public relations consultant.

Recent documents released to Congressional investigators revealed that public relations expert Mark McKinnon engaged in high-level consultation with the White House after the US attorney firing situation began to boil over. McKinnon, a well-known campaign strategist for the GOP, corresponded in his official capacity as vice chairman of Public Strategies Inc., a corporate public relations firm, with Peter Wehner, director of the White House Office of Strategic Initiatives. The Office of Strategic Initiatives is an executive branch think-tank which "plans, develops and coordinates a long-range strategy for achieving presidential priorities," and "conducts research and assists in message development," according to the White House web site.

In his email, McKinnon asked Wehner for help in response to a critical article written by Salon.com columnist Joe Conason on Friday, February 9. The following Monday, McKinnon wrote to Wehner asking, "Do we have something off-the-shelf on this?"

Wehner forwarded McKinnon's inquiry to White House Associate Counsel Christopher Oprison, one of the main lawyers involved in the White House message coordination with the DOJ regarding the attorney firing scandal. In Wehner's email, he includes a caveat that seems to signal that he understood the potentially unethical consequences of bringing an outside public relations expert into the mix: "Would you, [or] somebody at DOJ, be able to send along to me a response to the charges by Joe Conason, which I could pass along to Mark McKinnon? I'd be grateful if you could - and I'd understand if you can't."

Based on reporting by Truthout, the watchdog group Citizens for Responsibility and Ethics in Washington (CREW) filed an FOIA request to the DOJ. The request states that CREW "seeks all emails sent to or from Mark McKinnon [and/or any individuals associated with its companies] and any former or current DOJ employee in the Offices of the attorney general, deputy attorney general and/or associate attorney general, concerning any aspect of the Congressional inquiry into the firing of US attorneys." The FOIA can be accessed at the CREW web site.

Despite documented communication with McKinnon, FOIA requests cannot be issued to the White House because the Freedom of Information Act applies only to federal government agencies. No response from White House officials to McKinnon was included in the documents released by the DOJ, but McKinnon confirmed to Truthout that he received "talking points they were using on the Hill and public testimony" from the White House. McKinnon claims that he has not had any contact with the DOJ.

The Bush administration has a history of paying public relations consultants to help with political messaging. In 2005, during the Bush administration's attempt to privatize Social Security, it was revealed that the administration paid public relations giant Fleishman-Hillard nearly $1.8 million to help trump-up the risks faced by the Social Security system. The Bush administration also came under fire for hiring the public relations firm Ketchum to coordinate messaging for the No Child Left Behind Act (NCLB). As part of a contract agreement between the Department of Education and Ketchum, the popular African-American pundit Armstrong Williams "would regularly comment on NCLB during the course of his broadcasts, and would work with African-American newspapers to place stories and commentary on NCLB." Williams was paid $240,000 for his advocacy of the program. Jill Bratina, a former employee of Ketchum, was later hired by McKinnon's public relations firm.

In response to a previous Truthout report, McKinnon claimed that he was "not a consultant to the White House," and had "never been paid a dime by the White House or the Republican National Committee." According to McKinnon, he sent an email to the director of the top White House strategy office asking for a "response to Joe Conason's article because he was 'curious about what the facts were,'" and that the White House staff didn't do "anything for me that [they] wouldn't have done for any other citizen."

McKinnon's campaign strategy company, Maverick Media Inc., was a primary benefactor of the 2000 and 2004 Bush campaigns; Bush spent $170 million with McKinnon's firm during the 2004 election cycle. Previously, McKinnon worked as a media consultant for Democrat Ann Richards in her 1990 and 1994 Texas gubernatorial campaigns. Richards was defeated in 1994 by Bush. After the defeat, McKinnon switched sides and went on to help Bush to reelection in 1998. Bush has called McKinnon "a trusted ally," and said he was "particularly impressed by [McKinnon's] honesty," according to the Public Strategies Inc.'s web site. A scandal involving McKinnon erupted in the run-up to the 2000 presidential election. In preparation for a debate between then Vice President Al Gore and then Governor Bush, McKinnon videotaped a Bush practice debate session. This tape, along with 120 pages of debate preparation documents, were then sent to Gore campaign adviser Tom Downey. The Gore campaign immediately alerted the FBI, who began an investigation. A Maverick Media employee under

McKinnon, Juanita Yvette Lozano (also a former Richards campaign staff member), eventually pleaded guilty to lying to a grand jury during the investigation. A surveillance tape from the post office from which the package was sent clearly depicted Lozano with a package in tow. She falsely claimed that the package she was mailing that day was a pair of khaki pants from the GAP that she was returning on McKinnon's behalf. Lozano was sentenced to one year in prison followed by three years probation for her attempt to cover up her involvement in the leak. McKinnon was not accused of any crime.

While some critics attempted to pin the motivation behind the leak on the Gore campaign, others asserted that this was a dirty trick on behalf of the Bush campaign staff to try and entrap the Gore campaign. After the investigation, the FBI concluded that Gore's campaign staff had acted appropriately.

The emails released by the DOJ show that McKinnon's request for information on the attorney firings was addressed by the DOJ Liaison to the White House Monica Goodling. Goodling sent the White House counsel's office a list of talking points intended to counter claims that the spate of attorney firings were politically motivated. Goodling did not indicate that the information had yet been made public; instead she wrote: "It is info we have given to friendlies on the Hill. It can all go [to McKinnon]." The email chain can be read at the House of Representatives Judiciary Committee's web site.

Goodling's credibility was severely damaged when she testified under immunity before the House Judiciary Committee on May 23. Goodling admitted that she "may have taken inappropriate political considerations into account" when selecting non-political career positions in the DOJ. As of this writing, CREW has not received a response to their FOIA request from the DOJ. The White House has not returned repeated requests for comment on this situation.

# The purge, the spin and KR@georgewbush.com

On the same day that the chairman of the House Judiciary Committee <u>threatened the White House</u> with "compulsory process" if it doesn't start cooperating with a congressional investigation into the firing of <u>U.S. attorneys</u> last year, the Justice Department has turned over a new set of purge-related documents.

We don't know which came first -- the threatening letter or the document dump -- but we do know that this latest round of documents reveals, with more clarity than before, just how hard the White House and the Department of Justice worked to spin away the problems caused by the firings of federal prosecutors:

**Famous last words.** On Dec. 18, 2006, the Justice Department's Rebecca Seidel sent an <u>e-mail</u> to several of her colleagues warning them that Republican Sen. Jon Kyl was "significantly disturbed" over the firing of U.S. attorney Paul Charlton and might raise the matter at an upcoming hearing. "We should ensure that the AG is adequately prepared to deal with a question over the firings of the USAs," she wrote. "Do we need a paper on it, or is the AG prepared?" Associate Deputy Attorney General William Moschella brushed her off: "I don't think he will raise this in public," he said of Kyl. As a short-term matter, Moschella was right: Rather than raising any questions about Charlton during Alberto Gonzales' Jan. 18 appearance before the Senate Judiciary Committee, Kyl praised the attorney general for his work on terrorism and Internet gambling.

**A Joe Conason column.** On Feb. 9, Salon published a <u>column</u> in which Conason argued that the firing of eight U.S. attorneys last year -- we now know it was nine -- represented "a violation of American law enforcement traditions and ... a triumph of patronage over competence." Shortly thereafter, <u>Mark McKinnon,</u> the former chief media advisor for the Bush-Cheney campaign, sent an <u>e-mail message</u> to <u>Peter Wehner,</u> who runs the White House Office of Strategic Initiatives, a Karl Rove invention that the Washington Post has said amounts to "the closest thing the White House has to an in-house think tank."

Why was a private media consultant, who now works for John McCain, communicating with a Rove deputy about Conason's column about firings at the Justice Department? That's not clear from the e-mail chain. What is clear: McKinnon forwarded the column to Wehner, told him that he didn't think Conason was "generally worth responding to" -- don't be hurt, Joe; they feel <u>the same way</u> about the U.S. Senate -- but wondered if there was something "off the shelf" he could use in response to the column. Wehner forwarded the request to Christopher Oprison at the White House Counsel's Office, with copies going to now-departed Gonzales aides Monica Goodling and Kyle Sampson. Goodling responded, providing Oprison with a set of documents she identified as "the relevant talkers and statistics" but noting, "We do not have a canned editorial response." When Oprison asked Goodling if it was OK to pass along the information to McKinnon, she said yes because it had already been given to "friendlies on the Hill."

**The curious quotation marks.** On Feb. 26, Oprison sent a message to Goodling in which he said he needed "to chat about the 'performance evaluations' for the departing U.S. attorneys." He asked her to call him -- some things are better handled outside the White House e-mail system, apparently -- and said that it's a "time sensitive issue for Tony." Tony? Tony? The first Tony that comes to our mind is White House press secretary Tony Snow, who might indeed have been expecting, at that point, to be facing questions about the purge.

**An e-mail to Karl Rove?** On Feb. 28, Special assistant to the president Scott Jennings sent an "urgent" and "high importance" e-mail to a small group that included Gonzales chief of staff Sampson, White House counsel Fred Fielding, deputy White House press secretary Dana Perino and somebody with the address "KR@georgewbush.com." The news: Sen. Pete Domenici's chief of staff had just called to warn

the White House that fired New Mexico U.S. attorney David Iglesias would be holding a press conference that day in which he'd say that two members of Congress had pressured him to bring indictments in a politically charged corruption case -- and that he believed his refusal to do so may have had something to do with his firing.

Jennings told Fielding, Perino and "KR" that he would be available to discuss the matter further because, in his words, "once this happens in Albuquerque, the reporters will be asking DOJ and the White House." Jennings told the group that according to Domenici's chief of staff, "Domenici's idea is not to respond" to Iglesias' allegations "and hopefully make this a one-day story." And indeed, when he was first asked about Iglesias' allegations, Domenici said: "I have no idea what he's talking about." Only later did he admit that he was one of the two members of Congress who had called Iglesias about the case -- and that he regretted doing so.

**Missing the talking points.** When Justice Department spokesman Brian Roehrkasse received a copy of Jennings' e-mail, he responded with the operative, if impolitic, question: "My question is why would members of Congress and a U.S. attorney be discussing the timing of a criminal indictment?"

**Heck of a Job, Brian.** On March 3, Roehrkasse forwarded to his Justice Department colleagues a copy of a Washington Post story on the purge that he said was "far better than most recent Post stories on this subject." The piece minimized White House involvement in the purge; quoting sources, it said that the White House had approved the list of prosecutors to be fired only after "senior Justice Department officials identified the prosecutors they believed were not doing enough to carry out President Bush's policies on immigration, firearms and other issues." For the folks working the issue at the Department of Justice, that amounted to a victory. Deputy Attorney General Richard Hertling declared the Post's piece "by far and away the best story I've seen on the subject" and expressed relief that an accompanying Post editorial -- "The Justice Department's firing of a group of U.S. attorneys is neither as sinister as critics suggest nor as benign as the department would have you believe" -- was "not a bad beating, though against our interests."

"Great work, Brian," Sampson said in an e-mail to the group. "Kudos to you and the [deputy attorney general]."

-- Tim Grieve

Print Email Digg it Del.icio.us

Permalink [02:32 EST, May 22, 2007]

Post a comment | Read comments (9)

# EXHIBIT J

The Director of Public Aff



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                *Washington, D.C. 20530*

AUG 0 2 2007

Kimberly D. Perkins, Esq.
Citizens for Responsibility and Ethics
in Washington                              Re:    Appeal No. 07-1934
Suite 450                                          Request Nos. AG/07-R0617,
1400 Eye Street, NW                                DAG/07-R0618 and ASG/07-R0619
Washington, DC 20005                               MAP:KM

Dear Ms. Perkins:

       This responds to your letter dated July 10, 2007, received in this Office on July 12, 2007,
in which you appeal from the decision of the Director of Public Affairs denying expedited
processing of your request for access to copies of e-mail messages Department of Justice
employees in the Offices of the Attorney General, Deputy Attorney General, and Associate
Attorney General, and Mark McKinnon, Maverick Media, Inc., or Public Strategies, Inc.
regarding the Congressional inquiry into the firings of United States Attorneys.

       Your appeal has been assigned number **07-1934**.  Please mention this number in any
future correspondence with this Office regarding this appeal.

       Your letter to the Office of Public Affairs asked for expedited processing pursuant to the
fourth standard for expedited processing enumerated in Department of Justice regulations.  Under
this standard, you must demonstrate that your request warrants expedited treatment because it
involves "[a] matter of widespread and exceptional media interest in which there exist possible
questions about the government's integrity which affect public confidence."  28 C.F.R.
§ 16.5(d)(1)(iv) (2007).

       The Director of Public Affairs considered your request for expedited processing under the
fourth standard and determined that your request should be denied.  Upon receipt of your appeal,
the Director of Public Affairs again reviewed your request for expedited processing and
determined that the elements of standard (iv) are not met.  I agree with the determination of the
Director of Public Affairs that expedited treatment of your request is not warranted under this
standard.  Although the umbrella issue of the firings of the U.S. Attorneys has been the subject of
widespread and exceptional media interest, that is not the case with the particular subject of your
request.  Accordingly, the Director of Public Affairs properly determined that you failed to meet
your burden under the fourth standard for expedited processing.

File

-2-

If you are dissatisfied with my action on your appeal for expedited treatment of your request, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(6)(E)(iii).

Sincerely,

Janice Galli McLeod
Associate Director

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 07-1620 (RMC) |
| U.S. DEPARTMENT OF JUSTICE ) ) | |
| Defendant. ) ) | |

### [PROPOSED] ORDER

The Court, having fully considered Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, finds that Motion to be well-taken, and it is hereby GRANTED.  This action is DISMISSED for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

IT IS SO ORDERED, this _____ day of _____, 200__.


_____
HON. ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE